IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VERONICA LOPEZ, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-25-3662 |
| KRISTI NOEM, et al., | * | |
| Respondents. | * | |
| | * | |

\*\*\*

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Petitioner Veronica Lopez's Motion for Temporary Restraining Order (ECF No. 4). The Motion is fully briefed, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant in part Lopez's Motion for Temporary Restraining Order, which the Court construes as a Motion for Preliminary Injunction.[1]

### I.   BACKGROUND

**A.   Factual Background**

Petitioner Veronica Lopez is a forty-six-year-old native and citizen of Venezuela. (Mot. TRO ["TRO"] at 3, ECF No. 4).[2] Fleeing from persecution in Venezuela, Lopez entered the United States on December 29, 2024 with her twelve-year-old son. (Id.). After

---

[1] As discussed below, the Court will reserve judgment on the Amended Petition for Writ of Habeas Corpus (ECF No. 10) at this time.
[2] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

being arrested by a United States Customs and Border Protection agent, Lopez was released on her own recognizance into the United States Immigration and Customs Enforcement's ("ICE") Alternatives to Detention ("ATD") Intensive Supervision Appearance Program ("ISAP") on or around January 16, 2025. (Response to Am. Pet. & Mot. TRO ["Response"] at 1–2, ECF No. 15; Individual Service Plan at 2, ECF No. 15-2).

Under Lopez's ATD/ISAP agreement, she was required to adhere to an Individual Service Plan that included "office visits every eight weeks, ISAP case management, ISAP court tracking, ISAP home visits every 8 weeks," and indefinite "face to face" reporting "every 32 weeks on Thursday at 10:30." (Individual Service Plan at 2). This plan also required Lopez to use a smartphone monitoring system called "SmartLINK" to check-in remotely with her ISAP officer. (Id.). Lopez affirms that she "continuously complied with all orders [related to her ATD/ISAP agreement] . . . , including answering ICE video calls and reporting in person to ICE when requested." (TRO at 2). She notes one incident, however, in May of 2025, when she was unable to respond to a video call due to a poor signal at her son's graduation. (Id. at 3). Lopez indicates that she was able to cure this technical difficulty within the same day by contacting her ISAP officer. (Id.).

After entering the United States, Lopez timely filed an asylum application with United States Citizenship and Immigration Services ("USCIS") on or about April 11, 2025, listing her son as a derivative applicant, and is awaiting an interview. (Am. Pet. ¶ 1, 13, ECF No. 10). She lives in District Heights, Maryland, with her minor son, daughter, son-in-law, and granddaughter. (TRO at 3). Lopez has no criminal record and has strong family and community ties in Maryland. (Id. at 7, 10).

On November 6, 2025, ICE officials requested that Lopez appear in-person for a check-in at ICE's Silver Spring location. (Id. at 3). Upon her arrival, ICE officials arrested, detained, and transferred Lopez without any prior notice to the Baltimore Field Office. (Id.). On this same day, ICE officials filed a Form I-862 Notice to Appear ("NTA") with the Executive Office for Immigration Review, charging Lopez under the Immigration and Nationality Act ("INA") Section 212(a)(6)(A)(i), for being present in the United States without being admitted or paroled. (Response at 3; NTA at 2, ECF No. 9-5). Respondents then transferred Lopez to ERO El Paso Camp East Montana in El Paso, Texas, where she remains detained. (Am. Pet. ¶ 5). According to Respondents, Lopez is currently in INA removal proceedings under 8 U.S.C. § 1229a, in which her pending asylum application will be considered. (Response at 3).

**B.    Procedural History**

On November 7, 2025, Lopez filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and a Motion for Temporary Restraining Order (ECF No. 4). After the Petition and Motion were fully briefed, Lopez filed an Amended Petition on November 21, 2025, citing violations of her due process rights and requesting that this Court order her immediate release under 28 U.S.C. § 1361. (Am. Pet. at 7–9, ECF No. 10). Respondents submitted a consolidated Response to the Amended Petition and Motion for Temporary Restraining Order on November 26, 2025. (ECF No. 15). On December 2, 2025, Lopez responded by reasserting her prior Reply (ECF No. 11).[3] (See Pet.'s Reply

---

[3] All citations or references to Lopez's Reply refer to ECF No. 11, unless specified otherwise.

3

Response Am. Pet. & TRO at 2, ECF No. 16). To date, Petitioner has not had a bond hearing in front of an Immigration Judge ("IJ") and remains detained in in El Paso, Texas. (See Response at 3; Am. Pet ¶ 2).

## II. DISCUSSION

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243; see also Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *2 (E.D.Mich. Sept. 9, 2025) (explaining relevant standard of review in habeas cases).

### B. Analysis

#### 1. Jurisdiction

The Court will first address jurisdiction. Respondents argue that this Court does not have jurisdiction because 8 U.S.C. § 1226(e) bars judicial review of discretionary judgments and decisions such as those at issue here. (Response at 9). Nevertheless, this Court and others have found that immigration detention, including discretionary detention under Section 1226, is still subject to constitutional guardrails. Mansaray v. Perry, No. ELH-21-1044, 2021 WL 2315415, at *5 (D.Md. June 7, 2021); see, e.g., Chogllo Chafla v. Scott, No. 2:25-CV-00437-SDN, 2025 WL 2688541, at *4 (D.Me. Sept. 21, 2025).

Under 28 U.S.C. § 2241(c)(3), the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts they are being held in custody "in violation of the Constitution or laws or treaties of the United States." As the Supreme Court explained, the "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Here, Lopez seeks immediate release from custody, which she contends violates the Constitution of the United States. (Am. Pet. at 7–9). Thus, this Court finds that Lopez properly invokes the Court's habeas jurisdiction. Lopez's claims squarely fall within the context of a petitioner properly challenging the legality and constitutionality of her detention. This is sufficient for the Court to maintain jurisdiction over this action. See, e.g., Chogllo Chafla, 2025 WL 2688541, at *4 (finding jurisdiction because "Petitioners' claims squarely fall within the context of challenging the legality and constitutionality of their detentions").

### 2. Statutory Framework

The Government[4] cites to 8 U.S.C. § 1226 as support for Lopez's ongoing detention. (Response at 3–4). Lopez does not dispute the application of Section 1226; thus, the Court will undertake its analysis under this framework. (See generally Am. Pet.; TRO; Reply). Respondents contend that Lopez's detention is lawful under 8 U.S.C. § 1226(b). (Response at 2). Section 1226(b) provides that the "Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and

---

[4] The Court uses the terms "Government" and "Respondents" interchangeably throughout.

detain the alien." Thus, for Section 1226(b) to apply, a noncitizen must already be on bond or parole under subsection (a). See Leal-Hernandez v. Noem, No. JRR-25-CV-02428, 2025 WL 2430025, at *10 (D.Md. Aug. 24, 2025). Subsection (a), as described above, provides that:

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . and pending such decision, the Attorney General-- (1) may continue to detain the arrested alien; and (2) may release the alien on [either] (A) bond . . . or (B) conditional parole . . . .

8 U.S.C. § 1226(a) (emphasis added). This language undoubtedly vests the government with broad authority to arrest and detain noncitizens, but Courts have found that "due process must account for the wide discretion that Section 1226(a)" provides. See, e.g., Lopez Benitez v. Francis, 795 F.Supp.3d 475, 492 (S.D.N.Y. 2025); Chogllo Chafla, 2025 WL 2688541, at *5 ("8 U.S.C. § 1226 is considered the 'usual removal process' and entitles a noncitizen to a wider range of due process protections." (quoting Dep't of Homeland Sec. v. Thuerassigiam, 591 U.S. 103, 108 (2020))).

Generally, when a person, like Lopez, is apprehended upon entry into the country and then later released on their own recognizance into an ATD/ISAP program, they are deemed to be released into a form of "conditional parole" authorized by Section 1226. Martinez v. Hyde, 792 F.Supp.3d 211, 215 (D.Mass. 2025) ("Release on recognizance is . . . a form of 'conditional parole' from detention . . . , authorized under section 1226."); Patel v. Crowley, No. 25 C 11180, 2025 WL 2996787, at *5 (N.D.Ill. Oct. 24, 2025) (same). To be released on conditional parole, there must be a finding that the noncitizen

6

does not pose a risk of flight or danger to the community. Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007).

Because Lopez was initially detained by CPB agents upon entry into the United States in December 2024 and released on her own recognizance into an ATD program, the Court finds that she was on conditional parole, as described under Section 1226(a), at the time of her arrest on November 6, 2025. (See Response at 1–2).

### 3. Motion for Temporary Restraining Order/ Preliminary Injunction

Temporary restraining orders ("TRO") and preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a TRO may be issued only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition . . . ." Fed.R.Civ.P. 65(b)(1)(A). A preliminary injunction may issue "only on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). Here, Respondents received notice and filed a written response in opposition to the Motion. (ECF No. 15). The Court, therefore, will construe Lopez's motion as one for a preliminary injunction. See U.S. Dep't of Lab. v. Wolf Run Mining Co., 452 F.3d 275, 283 (4th Cir. 2006) ("[T]he district court could properly consider a motion for a TRO as a request for a preliminary injunction, based on the fluidity of the relationship between TROs and preliminary injunctions, focusing not on a specific time period but on whether the opposing party had a fair opportunity to oppose it.").

To prevail on a motion for a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the

absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that the injunction is in the public interest. See Sarsour v. Trump, 245 F.Supp.3d 719, 728 (E.D.Va. 2017); Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). For the reasons discussed below, the Court will grant in part and deny in part Lopez's Motion.

        **a.**      **Likelihood of success on the merits**

Respondents' central argument is that Lopez is subject to discretionary detention under 8 U.S.C. § 1226(b) for her alleged failure to attend a virtual home visit on June 17, 2025, as required under the terms of her ATD agreement. (Response at 6–7). Lopez disputes this claim and urges this Court to order Respondents to release her from detention on the grounds that Respondents' decision to detain, transfer, and remove her was a violation of her due process rights and the Administrative Procedure Act. (TRO at 6–7).

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). It is well established that such protection extends to noncitizens, including those who are subject to conditional parole. See id. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Reno v. Flores, 507 U.S. 292, 306 (1993). The "essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case

against him and opportunity to meet it.'" Mathews v. Eldridge, 424 U.S. 319, 348 (1976) (quoting Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." Velasco Lopez v. Decker, 978 F.3d 842, 850 (2d Cir. 2020).

When determining whether a due process violation occurred, courts consider three factors, as outlined in Mathews v. Eldgridge, 424 U.S. 319 (1976): (1) the private interest affected by official action; (2) the risk of erroneous deprivation of that private interest and the value of additional procedures to protect that interest; and (3) the Government's interest, including the burdens associated with the additional procedures sought. Id. at 335. At a minimum, procedural due process requires fair notice and some opportunity to be heard. Id. at 333 (citations omitted). Here, the Court finds that all three factors weigh in Lopez's favor.

First, the private interest at issue is Lopez's liberty interest. As explained by our sister court, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." J.S.H.M v. Wofford, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *14 (E.D.Cal. Oct. 16, 2025) (citation modified); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects."). To be sure, noncitizens "are due less process when facing removal hearings than an ordinary citizen would have," Miranda v. Garland, 34 F.4th 338, 361 (4th Cir. 2022); but less process does not mean no process at

9

all, Am.-Arab Anti-Discrimination Comm. v. Ashcroft, 272 F.Supp.2d 650, 669 (E.D.Mich. 2003) ("The fact that excludable aliens are entitled to less process, however, does not mean that they are not at all protected by the Due Process Clauses of the Fifth and Fourteenth Amendments." (quoting Rosales-Garcia v. Holland, 322 F.3d 386, 409–10 (6th Cir. 2003))).

Here, Lopez was initially arrested and released by a DHS officer in December 2024, subject to her participation in the ATD program. (Response at 1–2). For eleven months she cultivated strong family and community ties in District Heights, Maryland. (Am. Pet. ¶¶ 4, 15). On these facts, this Court joins other district courts in finding that Lopez has a liberty interest in remaining out of custody. See, e.g., J.S.H.M, 2025 WL 2938808, at *15; Ortega v. Bonnar, 415 F.Supp.3d 963, 966, 968 (N.D.Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond."); S.D.B.B. v. Johnson, No. 1:25-CV-882, 2025 WL 2845170, at *9 (M.D.N.C. Oct. 7, 2025) (finding petitioner had private interest in remaining free from detention).

Second, there is a significant risk of erroneous deprivation based on (1) the Government's failure to provide Lopez with the procedural protections under Section 1226, and (2) the nature of her warrantless arrest. Respondents agree that Lopez's detention falls under Section 1226's discretionary subsection, as opposed to mandatory detention, (Response at 7); thus, current law requires the Government to provide her with the procedural protections of Section 1226(a), which includes "the individualized determination of an immigration judge as to whether [she] should be released on bond,"

10

S.D.B.B., 2025 WL 2845170, at *10; Tumba v. Francis, No. 25-CV-8110 (LJL), 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025) (explaining that a petitioner is entitled to a bond hearing when detained under Section 1226's discretionary detention provision, under 8 C.F.R. § 1236.1(d)(1)). To date, however, there is no indication that Lopez received, or will receive, a bond hearing.[5] The Court, therefore, finds that the Government's failure to comply with its own agency regulations necessarily deprives Lopez of the procedural process due her, rendering her current detention unlawful. See S.D.B.B., 2025 WL 2845170, at *6 (finding that petitioner was unlawfully detained for over thirteen days under Section 1226, because the government failed to comply with its own agency regulations, including providing petitioner with bond hearing (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954))).

Additionally, Lopez contends, and Respondents do not dispute, that ICE officials failed to serve her with a warrant at the time of her arrest. (Am. Pet. ¶ 21; see generally Response). 8 U.S.C. § 1357 authorizes an immigration officer to administratively arrest a noncitizen without a warrant only when two requirements are met: (1) the officer must have "reason to believe" that the noncitizen is in the United States in violation of immigration laws or related regulations; and (2) the noncitizen is "likely to escape" before

---

[5] Respondents do note, however, that Lopez appeared for a master calendar hearing on November 26, 2025, and that "her case was reset for an additional master hearing on January 14, 2026." (Response at 3). A master calendar hearing is generally used to set the deadlines and other procedures for a noncitizen's removal proceedings and is separate from a bond hearing, which determines whether a noncitizen may be released on bail during the pendency of the proceedings. See Exec. Off. for Immigr. Review, Immigr. Ct. Practice Manual, Chs. 4.15(e) & 9.3(e), https://www.justice.gov/eoir/reference-materials/ic/chapter-9/3 (last visited December 5, 2025).

a warrant can be obtained. 8 U.S.C. § 1357(a)(2); United States v. Santos-Portillo, No. 7:18-CR-10-1H, 2019 WL 3047427, at *3 (E.D.N.C. May 31, 2019). In evaluating this warrantless arrest provision, courts have found that the phrase "reason to believe" is equivalent to constitutionally required probable cause. See, e.g., United States v. Segura-Gomez, No. 4:17-CR-65-FL-1, 2018 WL 6582823, at *6 (E.D.N.C. May 25, 2018). The burden is on the Government to establish the second prong—that agents had reason to believe the noncitizen was likely to escape before a warrant can be obtained. Id.

    Here, the Court finds that the Government likely had probable cause for Lopez's arrest; the Government has not, however, met its burden as to the escape-likelihood element of Section 1357. Respondents assert that Lopez failed to appear at a virtual home visit on June 17, 2025. (Guerrero Decl. ¶ 7, ECF No. 15-1; Violation at 2, ECF No. 15-4). Although Lopez disputes that she incurred any violation other than a slight technical mishap in 2025 (Am. Pet. ¶ 21), if the Government's record is correct this constitutes probable cause for her arrest. But there is no evidence that Lopez manifested an intention to escape at any point between her alleged ATD violation in May 2025 and her November 2025 check-in. In fact, the record reflects the opposite.

    According to Lopez, Respondents never informed her of any ATD/ISAP violations prior to her arrest on November 6, 2025. (Id.). In fact, the only potential infraction Lopez was aware of occurred on the date of her son's graduation in May of 2025—not June 17, 2025, as Respondents indicate. (Id. ¶ 2; TRO at 3). As Lopez explained, she missed ICE's unscheduled call in May 2025, due to a poor connection at her son's graduation event. (Am. Pet. ¶ 2; TRO at 3). Respondents then reached out to her emergency contact who in

12

turn helped facilitate a call between Lopez and ICE officials. (Am. Pet. ¶ 2; TRO at 3). In her view, any technical failures were cured the same day. (Reply at 2). For nearly five months, Lopez attended her regular check-ins without any indication of an issue from ICE officials. (Id.). Even assuming arguendo that the Government did not become aware of this alleged ATD/ISAP violation until her November 2025 check-in, and there is no evidence that this is the case, courts have found that a courthouse's one-hour lunch break is enough time for agents to obtain a warrant. Segura-Gomez, 2018 WL 6582823, at *78 ("At least in terms of the number of different types of officials who can issue warrants—over 50—acquisition of a warrant does not appear to be a daunting task." (citing to 8 C.F.R. § 287.5(e)(2))). Here, the Government has made no showing that a warrant could not have been obtained during Lopez's final check-in; thus, it fails to carry its burden of establishing the escape-likelihood prong of Section 1357. As such, the Court finds Lopez's arrest to be in violation of 8 U.S.C. § 1357.[6]

Taken together, the Government's failure to comply with its own regulations, including failing to provide a bond hearing as required under Section 1226 and failing to adhere to its own warrantless arrest provisions under Section 1357, poses a risk of erroneous deprivation. See, e.g., Martinez Hernandez v. Andrews, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D.Cal. Aug. 28, 2025) (finding that government's

---

[6] In United States v. Santos-Portillo, 997 F.3d 159 (4th Cir. 2021), the Fourth Circuit determined that a violation of Section 1357 is not of constitutional magnitude, so long as officials have probable cause for the noncitizen's arrest. Id. at 166–67. The court, however, did suggest that such a violation may warrant certain consequences, including internal disciplinary proceedings or loss of employment. Id.

failure to inform petitioner of ATD violations and failure to present petitioner with arrest warrant prior to petitioner's detention presented a risk of erroneous deprivation).

As to the value of additional procedures, this Court joins others in finding that, at minimum, a bond hearing in accordance with Section 1226 is of high value because it would allow a neutral arbiter to review the facts at issue, thereby greatly reducing the risk of erroneous deprivation. See J.S.H.M, 2025 WL 2938808, at *16 (citations omitted); Martinez, 2025 WL 2495767, at *12 (ordering a bond hearing when petitioner was detained for alleged ATD violations).

Finally, the third Matthews factor is the Government's interest in using the current process, including the burdens it would incur in using additional or substitute process. 424 U.S. at 335. In this case, the Government's stated interest in detaining Lopez under its current process is to "ensur[e] Petitioner's presence for her removal proceedings." (Response at 9). But given Lopez's pending asylum application, the Court finds that she already had a vested interest in meaningfully participating in any removal proceedings because there, she will have the opportunity to "assert [her] qualification for asylum as a defense to avoid removal." Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev., 513 F.Supp.3d 154, 162 (D.D.C. 2021). "Civil detention comports with due process only when a 'special justification' outweighs [an] 'individual's constitutionally protected interest in avoiding physical restraint.'" Rosado v. Figueroa, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *14 (D.Ariz. Aug. 11, 2025) (quoting Zadvydas, 533 U.S. at 690), report and recommendation adopted sub nom. Rocha Rosado v. Figueroa, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D.Ariz. Aug. 13, 2025). And here, the

14

Government asserts no special justification in continuing to detain Lopez without proper process.

As explained above, detention during Section 1226 removal proceedings "is discretionary and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the <u>opportunity for a bond hearing upon detention</u>." Tumba, 2025 WL 3079014, at *2 (emphasis added) (citing 8 C.F.R. § 1236.1(d)(1)). To be sure, this Court acknowledges the potential fiscal and administrative burdens such process places on the Government. But this burden is minimal when compared to the spectacular harm faced by those who are detained in a manner inconsistent with constitutional requirements. As such, the Court concludes that Lopez has demonstrated a likelihood of success on the merits of her procedural due process claim.[7]

### b. Irreparable harm

Lopez asserts that she is likely to suffer irreparable harm in the absence of preliminary relief based on her ongoing detention. (TRO at 5). This Court agrees. Because the Court "has found a likelihood of success on [Lopez's] due process claim, the deprivation of such a constitutional right alone would constitute irreparable harm. Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin., 472 F.Supp.3d 183, 227 (D.Md. 2020). As noted by the Fourth Circuit in Miranda, the erroneous deprivation

---

[7] Lopez also seeks relief under the Administrative Procedure Act and the Eighth Amendment. (TRO at 6–7). Because the Court finds that success on Lopez's due process claim is likely, it declines to reach Lopez's other claims in the resolution of the Motion for Preliminary Injunction.

of a noncitizen's liberty "for even minimal periods of time, unquestionably constitutes irreparable injury." 34 F.4th at 365 (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)).

Here, absent preliminary relief, the deprivation to Lopez's liberty is beyond minimal. As an asylum-seeker with a pending asylum application before USCIS, Lopez faces prolonged detention without a bond hearing in light of the Trump administration's recent decision to halt all asylum proceedings.[8] (Am. Pet. ¶ 8). But aside from her liberty interest, Lopez is also likely to suffer irreparable emotional harm from being separated from her family, including her son and granddaughter, for whom she is the primary caretaker. (TRO at 5); see Sanchez v. McAleenan, No. GJH-19-1728, 2020 WL 607032, at *7 (D.Md. Feb. 7, 2020) (finding petitioners likely to suffer irreparable emotional and economic harm in absence of preliminary injunction when they were separated from their families). On these grounds, the Court finds that Lopez has demonstrated a likelihood of irreparable harm in the absence of preliminary relief.

    c.    **Balance of the equities and the public interest**

When the Government is the opposing party, the balance of the equities and the public interest merge because "the interest of the government is the interest of the public . . . ." J.S.H.M, 2025 WL 2938808, at *16; Nken v. Holder, 556 U.S. 418, 435

---

[8] See U.S. Citizenship & Immigr. Servs., PM-602-0192, Policy Memorandum on Hold and Review of Pending Asylum Applications (Dec. 2, 2025), https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf. The Court takes judicial notice of this Policy Memorandum found on USCIS's website. See e.g., Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking judicial notice of publicly available information on state government's website).

(2009). This Court agrees with the analysis of our sister court in Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763 (N.D. Cal. July 4, 2025), and finds it correctly addresses the situation here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." Jorge M. F.[ v. Wilkinson, No. 21-CV-01434-JST], 2021 WL 783561, at *3 [(N.D. Cal. Mar. 1, 2021)] (cleaned up) (quoting Ortiz Vargas[ v. Jennings, No. 20-CV-5785-PJH], 2020 WL 5074312, at *4 [(N.D. Cal. Aug. 23, 2020)], and then quoting Hernandez[ v. Sessions], 872 F.3d [976,] 996) [(9th Cir. 2017)]; see also Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner-Plaintiff faces the danger of . . . deprivation of her liberty. Yet the comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).

Id. at *3. Put another way, "the public 'undoubtedly has an interest in seeing its governmental institutions follow the law . . . .'" Roe v. Dep't of Def., 947 F.3d 207, 230–31 (4th Cir. 2020) (quoting Roe v. Shanahan, 359 F.Supp.3d 382, 421 (E.D.Va. 2019)).

Here, the Court has found a likelihood that Respondents violated Lopez's due process rights at minimum by failing to provide her with a bond hearing as required by statute and at most by failing to arrest her in accordance with 8 U.S.C. § 1357. Given that there is no evidence that Lopez poses a flight risk or a danger to the community, the Court has little difficulty concluding that the balance between minimally costly procedures and

preventable human suffering tips decidedly in Lopez's favor. Accordingly, the Court is satisfied that the balance of the equities weighs in favor of granting Lopez's request for injunctive relief in part by ordering Respondents to provide Petitioner with a bond hearing within seven days of this Court's Order. See S.D.B.B., 2025 WL 2845170, at *11.

### 4. Amended Petition

Lopez's Amended Habeas Petition asserts that her detention violates her due process rights and requests that this Court order her immediate release under 28 U.S.C. § 1361. (Am. Pet. at 7–9). As discussed earlier, Lopez's argument concerning any due process violations is unlikely to succeed if Respondents provide her with the rights noted above. Accordingly, the Court will reserve judgment on Lopez's Amended Habeas Petition and will permit Respondents to file further briefing on the merits of the Petition within thirty (30) days and permit Lopez to respond within thirty (30) days thereafter. Should Respondents find no need for further briefing, they must file such notice with the Court within thirty (30) days.

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part Lopez's Motion for Temporary Restraining Order (ECF No. 4), which the Court construes as a Motion for Preliminary Injunction, to the extent explained in this Opinion and the accompanying Order. The Court will deny the Motion as to all other respects. A separate Order follows.

Entered this 5th day of December, 2025.

/s/
George L. Russell, III
Chief United States District Judge
